UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| THOMAS TAFT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00005-JMS-MG |
| | ) | |
| NAVEEN RAJOLI, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND DISMISSING ACTION**

Thomas Taft alleges that Dr. Naveen Rajoli was deliberately indifferent to his serious medical conditions while incarcerated at Wabash Valley Correctional Facility (WVCF) in 2020 and 2021. Dr. Rajoli has moved for summary judgment. Even construed in his favor, the evidence would not allow a jury to return a verdict in Mr. Taft's favor. Therefore, Dr. Rajoli's motion is granted, and this action is dismissed with prejudice.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

Mr. Taft failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); see S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)); *see also Gupta v. Melloh*, 19 F.4th 990, 998 (7th Cir. 2021) ("Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the non-moving party. Sometimes the facts taken in the light most favorable to the non-moving party come from the party moving for summary judgment or from other sources.").

## II. Facts and Claims

This suit concerns Mr. Taft's experience with three medical conditions: hepatitis C, low blood sugar, and knee pain. "Prison officials violate the [Eighth Amendment's] prohibition on cruel and unusual punishment if they act with deliberate indifference to a prisoner's serious medical condition." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment' or 'is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). "As its name implies, deliberate indifference requires 'more than negligence and approaches intentional wrongdoing.'" *Goodloe v. Sood*, 947 F.3d 1030 (7th Cir. 2020) (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)). "[T]he evidence must show that the prison official . . . knew or was aware of— but then disregarded—a substantial risk of harm to an inmate's health." *Id.*

A.     **Hepatitis C**

Mr. Taft was diagnosed with hepatitis C in 2010, during a different period of incarceration. Dkt. 39-2 at 45:4–14. He did not receive any treatment for hepatitis, even after being released from prison in 2014. *Id.* Mr. Taft was reincarcerated early in 2017. *Id.* at 21:7–9. It is not clear precisely when he moved to WVCF.

On May 13, 2020, Mr. Taft had an appointment with Dr. Samuel Byrd at WVCF to discuss recent bloodwork. Dkt. 39-3 at 32–34. The test results themselves are not in the record. However, Dr. Byrd conveyed to Mr. Taft and documented in his medical records that hepatitis C was no longer detectable in his blood. *Id.* at 32. Dr. Byrd's treatment notes indicate that he believed Mr. Taft spontaneously cleared the virus.[1] Mr. Taft has not received any treatment for hepatitis C since his visit with Dr. Byrd, and he has suffered chronic liver pain. Dkt. 39-2 at 48:10–49:7.

Mr. Taft came under Dr. Rajoli's care at WVCF in September 2020. Mr. Taft states that, during one appointment, he saw a medical record on the computer in Dr. Rajoli's office that indicated his "enzyme levels were at 500," which he says would be consistent with active hepatitis C. *Id.* at 50:21–51:9. No evidence in the record documents Mr. Taft's enzyme levels or explains the relationship between enzyme levels and hepatitis C. Mr. Taft confronted Dr. Rajoli about that

---

[1] A minority of individuals infected with hepatitis C spontaneously clear the virus from their bodies. *See* Jason Grebely, *et al.*, *Hepatitis C virus clearance, reinfection, and persistence, with insights from studies of injecting drug users: towards a vaccine*, 12 Lancet Infectious Diseases 408 (2012) (available online at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3608418/#:~:text =HCV%20infection%20will%20spontaneously%20clear,the%20design%20of%20HCV%20vaccines). Almost all individuals who self-clear the virus do so within 12 months of acute infection. *Id.* Self-clearance after a year is uncommon, but it occurs. *Id.* (documenting that between 5% and 13% of individuals who experience spontaneous clearance do so after one year). The Court provides this reference strictly for context—not as evidence that Mr. Taft did or did not clear the virus spontaneously.

4

record, and Dr. Rajoli responded that Mr. Taft's hepatitis C had spontaneously cleared. *Id.* Mr. Taft asked Dr. Rajoli to retest him, but Dr. Raoli declined. *Id.* at 55:14–20.

The parties do not dispute that hepatitis C is a serious medical condition, but Mr. Taft was not diagnosed with hepatitis C when he was in Dr. Rajoli's care. In fact, Mr. Taft's medical records documented that he *did not* have an active case of hepatitis C. There is no contrary evidence in the record. Mr. Taft's testimony about his enzyme levels is inadmissible because he bases it on a medical record that has not been presented to the Court. *See* Fed. R. Evid. 1002. And if the Court could consider Mr. Taft's assertion that his "enzyme levels were at 500," no evidence in the record explains why or how this is problematic. Dkt. 39-2 at 50:21–51:9. Finally, Mr. Taft has not presented any evidence that his condition was so obviously consistent with hepatitis C while he was under Dr. Rajoli's care that even a lay person would know he was infected with hepatitis C. *Perry*, 990 F.3d at 511.

The Court does not discount Mr. Taft's assertions that he continued to experience liver pain after being told that he spontaneously cleared the virus. To the extent Mr. Taft argues he experienced liver pain as a symptom of hepatitis C, though, the record does not support a finding of deliberate indifference for the reasons addressed in the preceding paragraph. To the extent Mr. Taft argues that his liver pain was a serious, standalone medical condition, he provides no argument—much less evidence—as to how Dr. Rajoli should have treated it or how the care he provided was "far afield of accepted professional standards." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Dr. Rajoli is entitled to summary judgment on the hepatitis claim.

**B.     Knee Pain**

Mr. Taft experienced knee pain in 2016, before he was reincarcerated. Dkt. 39-2 at 21:19–22. He sought treatment from a specialist, Dr. Madison. *Id.* at 21:2–9. Mr. Taft states that

Dr. Madison told him he would need surgery on both knees because they were not "anchored down." *Id.* at 20:14–20. Mr. Taft has not filed any medical records or other evidence of Dr. Madison's assessment or treatment.

Dr. Rajoli saw Mr. Taft on September 29, 2020, in response to complaints of knee pain. Dkt. 39-3 at 23–25. Dr. Rajoli's treatment notes indicate that he listened to Mr. Taft's descriptions of his symptoms, looked at the knee, and found no bruising, instability, or decreased mobility. *Id.* at 23. Mr. Taft did not report any functional limitations, but he notes that his lifestyle at WVCF did not involve much walking or physical activity. Dkt. 39-2 at 28:1–19, 29:7–18. Mr. Taft alleges that Dr. Rajoli's examination amounted only to placing one finger on one knee and stating that nothing was wrong. Dkt. 1 at ¶ 9.

At the time, Mr. Taft was receiving 1,000 milligrams per day of Keppra for his pain. *See* dkt. 39-3 at 27. Dr. Rajoli denied Mr. Taft's request for a higher dosage of Keppra and instead recommended that he supplement his Keppra with Tylenol. Dkt. 39-3 at 25. Mr. Taft refused Tylenol because he believed he was still infected with hepatitis C and feared that Tylenol would damage his liver. Dkt. 39-2 at 17:8–14.

Dr. Rajoli's treatment notes from September 29 state that he reviewed Mr. Taft's "past knee x-ray" and had "no acute findings." Dkt. 39-3 at 24. It is not clear what images Dr. Rajoli reviewed because the same note says that he encouraged Mr. Taft to request his previous images from Dr. Madison's office. *Id.* at 24–25.

Dr. Rajoli visited with Mr. Taft regarding knee pain again on November 17, 2020. Dkt. 39-3 at 8–10. Dr. Rajoli's assessment was substantially similar to his assessment on September 29. He again recommended Tylenol in addition to Keppra, and Mr. Taft again refused. *Id.* at 9.

6

Dr. Rajoli examined Mr. Taft on March 23, 2021, and again found no significant limitations or changes in Mr. Taft's knee condition. Dkt. 39-3 at 1–3. Mr. Taft specifically asked to change to a different pain medication—Trileptal—but Dr. Rajoli refused because he thought it would provide no better pain relief and may interact negatively with Mr. Taft's other medications. *Id.*

Mr. Taft believes Dr. Rajoli should have obtained x-rays and other relevant medical records from Dr. Madison and then arranged the surgery Dr. Madison said was necessary before Mr. Taft re-entered prison. As an Eighth Amendment medical care claim, Mr. Taft's argument is problematic in two respects.

First, Mr. Taft has not obtained and filed any x-rays, treatment notes, or other records from Dr. Madison. Without them, there is no admissible evidence in the record to support an inference that Mr. Taft's condition was worse than Dr. Rajoli acknowledged. The Court must view the evidence in the light most favorable to Mr. Taft, but his testimony that Dr. Madison said surgery was necessary is inadmissible hearsay. Fed. R. Evid. 801, 802. It is true that "[d]eliberate indifference may occur where a prison official . . . acts in a manner contrary to the recommendation of specialists," *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015), but there is no evidence here that a specialist ever recommended the course of treatment Mr. Taft asserts was necessary.

Second, the record would not allow a jury to find deliberate indifference. The record shows that Dr. Rajoli assessed Mr. Taft's condition multiple times and offered Tylenol in addition to the medication he was already receiving for knee pain. "An inmate is not entitled to demand specific care," and "medical professionals may choose from a range of acceptable courses based on prevailing standards in the field." *Walker v. Wexford Health Sources*, 940 F.3d 954, 965 (7th Cir. 2019) (cleaned up). Mr. Taft would have preferred a different approach, and perhaps a different approach would have been more effective. But Mr. Taft has not presented any evidence indicating

that the course Dr. Rajoli employed was "far afield of accepted professional standards." *Norfleet*, 439 F.3d at 396. Dr. Rajoli is entitled to summary judgment on the knee-pain claim.

**C.     Hypoglycemia**

In the fall of 2020, Mr. Taft began experiencing weakness and lightheadedness when he felt hungry. Twice—on October 22, and again on November 8— Mr. Taft fell in his cell and hit his head. Dkt. 1 at ¶ 18; dkt. 39-3 at 11, 20. On October 23, Mr. Taft received approval to receive a snack in the evening to help regulate his blood sugar. Dkt. 39-3 at 16–18.

Dr. Rajoli saw Mr. Taft for the first time following his blood-sugar episodes on November 17, 2020. Dkt. 39-3 at 8–11. Dr. Rajoli found no evidence of "persistent" hypoglycemia and noted that Mr. Taft's weakness and lightheadedness could be related to other conditions, including constipation. *Id.* at 8. They do not appear to have discussed blood sugar issues when Mr. Taft visited Dr. Rajoli in February and March, 2021. Dkt. 39-3 at 1–7.

In March 2021, Mr. Taft began receiving regular blood-sugar tests. Dkt. 39-2 at 42:6–16. Based on those tests, the medical staff determined Mr. Rajoli would continue to receive the evening snack. *Id.* at 43:14–19.

Mr. Taft argues that Dr. Rajoli should have initiated regular blood testing sooner, but the record does not indicate that he suffered any injury from that delay. Mr. Taft fell twice *before* he met with Dr. Rajoli in November 2020, and he did not fall again afterward. After the blood tests, Mr. Taft's blood sugar was regulated with an evening snack, which he was receiving from the time he met with Dr. Rajoli until the blood tests began. *See* dkt. 39-3 at 8 ("He however has been provided with night time sack for his history of hypoglycemia."); dkt. 39-2 at 42:6–16 (Q: "So you're saying even though the medical records say in October you received an order for a nighttime snack, and you talked about it with Dr. Rajoli in November of 2020 at your appointment, you

actually didn't receive it until March of 2021?" A: "No, I'm not saying that. I'm saying that I didn't receive the blood sugar checks until March. I'm not sure on whenever I got the snack.").

"[T]here is no tort without an actionable injury caused by the defendant's wrongful act." *Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014). This is true "even in the field of constitutional torts." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Perhaps it would have been wise for Dr. Rajoli to order regular blood-sugar checks in November 2020, but his failure to order those tests did not cause an actionable injury. Both Mr. Taft's falls took place before Dr. Rajoli met with him, and he received the very same treatment (an evening snack) after the November appointment that he received after the blood tests. Dr. Rajoli is entitled to summary judgment on the hypoglycemia claim.

### III. Conclusion

Dr. Rajoli's motion for summary judgment, dkt. [37], is **granted**. This action is **dismissed with prejudice**. The Court will enter **final judgment**.

**IT IS SO ORDERED.**

Date: 5/26/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

THOMAS TAFT
169288
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, IN 46914-9810

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Rachel D. Johnson
KATZ  KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com

Sarah Jean Shores-Scisney
KATZ  KORIN CUNNINGHAM, P.C.
sshores@kkclegal.com